This morning, Paula St. John v. Cach, LLC. Good morning. And may it please the court, I'm Matthew Hector for Appellants Paula St. John, Ivano Savenza, Terrence Needham, William Marcellos, Kenneth Minkowski, and Brian Serrata. These are six cases that have come up from the Oregon District. Most of them were resolved on Rule 12b-6 motions to dismiss. I believe one was on Rule 12c. Say that again. Most of these cases were resolved on a Rule 12b-6 motion to dismiss. There was one that was a Rule 12c motion for judgment on the pleadings. All these cases are about whether Section 1692E5 of the FDCPA prohibits the debt collector  Section 1692E5 of the FDCPA prohibits debt collectors from threatening to take an action they do not intend to take. At what point is it that they do not intend to? At the time of filing. At the time of the filing? Correct. Our position would be that a lot of these cases are filed with no intention to proceed to trial or to obtain the evidence necessary to prevail at trial. And that effectively, the whole point is to encourage a default judgment. Do any of these cases, after the time of filing, cause someone to pay or to negotiate or to do something? Certainly in all these cases, the consumers had retained counsel. And in some cases had taken time off work to attend what was supposed to be a trial date. They traveled down to the Daily Center from wherever they lived to attend a trial date. And in each of these cases, save, I believe, two, at trial they were non-suited. There were two where there was a motion to dismiss pending. The specific debt collector had said they were going to amend their complaint to prove they had standing to proceed and that they could prove up their case. So all of these have a pretrial concern and setting a trial date and all that? That's correct. So there's engagement. There's discussion with this is all time-consuming and setting a calendar. So a judge is looking at your calendar and saying, okay, how long is the trial going to take, et cetera? Correct. And these are mostly all small claims. This is high-volume. Okay. So they're all in small claims court? Is that what you're saying? That's correct. All right. That's a little different. But there is a lot of pro se in those. Correct. So the issue that I have is that because these are high-volume, small claims type collection cases, you're dealing with a huge disproportionate relationship of power between a company that has the resources to file these cases and someone who is an unsophisticated consumer who, when sued, pretty much believes, well, being sued means I have to go to trial once I settle the case. No, they were not unsophisticated sufficiently where they didn't owe the money. Each of these owed the money, right? Yes, but I don't know if that's necessarily relevant to the intention to proceed. Well, it's not relevant. It's just a fact. Yes. No one ever denied that they owed the money. That's correct. Obviously, if they didn't owe the money, they would maybe talk to an attorney or not show up or something. But whatever else it is, this process in collection seems to have several segments. You write demand letters, you go through all that stuff, all the things that a lot of times lawyers challenge, just the letter itself as it proceeds through. But you're saying that anybody who files a lawsuit, you say with the intent not to go to trial or the presumption not to go to trial or the possibility not to go to trial. Lacking the intent to go to trial. Correct. There's no way they go to trial. That's correct. But they had a legitimate basis to file the suit, right? They may have had a legitimate basis to file the suit. They all owed the debt. That's correct. However, and I believe that at the pleading stage, what their records show for purposes of pleading, just a facially proper complaint, even if they had a legitimate basis to file the lawsuit, by never intending to see it through to its end. What proof is there in this record, counsel, that they never intended to see it through? Well, I think the behavior of the plaintiffs. The fact that they dismissed? The fact that they dismissed and then the fact that in two of them they said, oh, we'll amend our complaint in response to a motion to dismiss and instead move to non-suit. Okay, so let's imagine this circumstance.  And the debtor comes through the back door of the court dragging an oxygen tank with the tube's upper nose and huffing and wheezing and says, you know, I have recently been diagnosed. I am sick. I can't work. I don't have enough money to hire an attorney. But here I am from my trial, and the plaintiff says, Judge, you know, we're going to move to dismiss. Are you indicating that that debt collector falls into the category of people that you're talking about here? Well, it would depend on whether you actually got that case through to discovery, I think. So it has to go to discovery? Probably not. I mean, probably not. I think that there are legitimate reasons to non-suit a case. But when you file a lawsuit specifically intending not to go to trial. Again, though, how do we know that they're specifically intending not to go to trial? As you said, there are a million reasons to dismiss a lawsuit that don't have any reek about them. Right. But I think you can, again, infer it from the conduct that, you know, especially in situations where before trial in a lot of these cases documents are produced. You know, in the small claims courts in Illinois, you've got to sort of show what you have before trial. At least some judges require it. So here's all of our documents, and we're not going to trial. You know, I'm a day of trial. It smacks of very disingenuous behavior and, I think, a lack of intent to proceed. Certainly in other cases I've worked on, not these specifically, where these types of claims have gone into discovery, you do get into records that buyers have that will say no witness, bad judge, no documents, no affidavit, file suit anyway, you know, that kind of stuff. And then once they figure out who the judge is or whatever other reason, you know, maybe they just didn't get the default they wanted, they nonsuit. These are cases where the vast majority of people are probably defaulted out. These are cases where people go in front of a judge who says, well, do you owe the money? And if they answer yes, case is over. You know, we're talking about a situation where when people show up, it's almost a disservice to them. Do you owe the money could be answered a lot of ways. Most of them say yes, but, or, well, I'm not sure if I owe them the money, but I know I owe somebody the money. So you're saying that these debt collectors acted in bad faith when they could have gotten an easy win and they just didn't? Well, I think that, you know, if you don't intend to go to trial, right, by setting a trial date and making someone miswork and come down for their trial, it seems to me to be a very, you know, it seems to be bad faith entirely that you would just nonsuit because you didn't intimidate that person into settling the claim prior to trial. But you just told us that most of the judges are just going to go, do you owe the money? And when the person says yes? Well, that's at the first appearance. The first time these cases are up, if you're not defaulted for not showing up on the first day, the judge will ask you, do you agree you owe the money? If you say no, trial date gets set. If you say yes, you're done. So what's the advantage of an attorney nonsuiting if he's just one step away from default? I'm sorry, what? Well, I guess that my question is maybe doesn't answer itself. You say at the outset they intend to dismiss the case, nonsuit, whatever you call it. And the way you're describing it, that's kind of stupid if they could just walk in and get a default when they know the money is owed. I don't really see where you want to head with this. This is sort of a strange idea that this is some kind of an abusive process. Intentionally, they don't really want to go to trial. It's been a long time since I've tried a case. But I know there are times when you get a call the night before and there are really some people that don't want to go to trial. Like the other lawyer wants to settle. That's always crummy because you worked hard to get the case to trial. Sometimes it's hard to do civil. But in a small case court, it's a different deal. A lot of pro se, a lot of people who you can describe any way you want that they don't regularly pay those kinds of bills. So what? Get a default? They don't owe anything. There's going to be any judgment liens. They may not care. I don't know. I just find that this is critical of a process that seems to be totally legitimate and legal. Well, but I believe, and I know this court has said in Swayze Med 1 that there's nothing unusual about requiring compliance with federal law and also with state law. So something that complies with state law. I filed my lawsuit. I have a right to non-suit it. I mean, those are things that happen, and I think there are situations where it's completely plausible that a case was filed in good faith with the intent to go to trial and maybe something happened. But I think it's possible in discovery, once you file the lawsuit under the FDCPA, you get at the records and you see if you can prove it up factually. It's more, is there a claim that can be stated here? And a threat to do something you don't intend to do, I mean, is braved under the FDCPA. Well, if you're going outside counsel, it might take more to try the case than the debt's worth. Well, you know, these are debts that are bought for $0.2 to $0.10 on the dollar. Well, if that's not the reason, then I'm completely at a loss.  Why would you forego recovery of a full amount if it's recoverable and they only paid $10 for a $1,300 claim? Well, that's a good question. That's kind of the intent piece that we're talking about is that you can infer this lack of intent because why wouldn't you go to trial? Especially when you're saying you have the documents to prove it. Why wouldn't you go to trial? Why is trial the defining point? Are you saying that a collector could not in good faith file a small claims complaint in the hopes of collecting some discovery that would make sure that, you know, they actually did have the claim they thought they had or in the hopes of negotiating when this debtor had been intractable up to now and so they're hoping that by bringing the case they can get some negotiating leverage? You're saying that those are bad faith actions? Why is it trial? Because, I mean, frankly in almost any civil suit that you can imagine, you've probably got a plaintiff who hopes deep in the back of their mind they don't have to go to trial. Correct. They don't want to spend the money. They don't want to spend the time. They're hoping something, mediation, settlement, something, will come out of the woodwork and keep them from having to go to trial. So why is trial and whether they intend to go to trial the defining point? Well, because these are cases where the debt collector is holding out the entire time. They can prove their case when, in fact, they never intend to. So you've wasted a person's time off of work at least twice coming to the courthouse. Wait a minute. If they owed the money, how are they wasting their time leaving work to defend it? Well, I mean, they're losing wages leaving work to defend it. But they've all admitted they owe the money. Well, not at the stage of the small claims case necessarily. I mean, at this point, if these specific plaintiffs, our appellants, have not denied they owe the money or owed the money to someone, I still don't think that's relevant to the essential harm, which is that we are looking at a system that weighs heavily against the consumer in small claims collections. Well, Fair Debt Collection Practice Act, do you think really envision the fact that legitimate debts could not be pursued by filing a lawsuit? I think legitimate debts can be pursued by filing a lawsuit if you intend to see a case through. You're adding the other thing. I don't know about adding it, actually going to trial. Well, I mean, and let's say there's a settlement that occurs, and the consumer settles for half of what's owed. That's a meaningful attempt to engage in something. But when these are set for trial and they don't do anything other than, you know, bluster as if they're going to proceed to trial, I think it shows that there's a lack of intent to have ever gone to trial. So at what minute do you violate the FDCPA under your theory? Is it when you walk into the courtroom and the judge says, counsel, you ready to go? And you say, yeah, never mind? Is that the moment that the violation has occurred? I believe it occurs at the time of filing. I mean, certainly at the time a case is filed, the debt collector should know whether it can actually proceed to trial. But you just said if there's a settlement, that would be a productive use. Well, that is, you know, I'm not saying people shouldn't be able to settle lawsuits. What I'm saying is that when you file your case, if you can't prove it and you know it, or if you never intend to prove it and you know it. So that brings me back to what in this record, other than dismissal, tells us that these people knew at the moment that they, or these agencies knew at the moment that they filed the complaint, that they could not prove their case? Well, I think that would be more of a fact question for summary judgment. And that might be a tough hill to climb at summary judgment, proving those facts. But as far as pleading a plausible claim, I think the conduct, you know, and in particular, I pointed out before, responding to a motion to dismiss with we're going to amend and then non-suiting. Oh, yeah, for sure. Judge, we have all these documents. We swear we don't. We have all our docs. We'll amend the complaint and we'll show you. And they don't. Well, if you had all the docs and you're such a slam dunk, then why didn't you? Why did you non-suit? It's interesting. I mean, when somebody has to miss work to show up to court, that means that if they're missing work, if somebody gets a default judgment, then they might get a garnishment. That's also correct. And judgments in Illinois collect interest at a rate of 9%. Well, I just point out that there are certain reasons that, you know, that this is just a whole new way of trying to get something changed under the Fair Debt Collection Act, and I think it's pretty far-reached, but I'm sure they all appreciate your effort. Right. Thank you. I'll leave it at that. My time is up, so if there's no more questions. Thank you. Thank you. Ms. Wheeler. Good morning, Your Honors. May it please the Court, my name is Catherine Wheeler, and I represent Defendant Appley Unifund in this matter. I'm also presenting argument today on behalf of all of the defendants. We ask that this Court affirm the District Court's ruling on all of the orders before this Court, because the plaintiff simply cannot articulate an FDCPA violation for the conduct alleged in this case. I'd like to start with questions which were raised, I believe, by all of the Court, but particularly by you, Judge Mannion, and by you, Judge Pepper, related to ownership of the debt. Who owned the debts in the case, and what does the record tell us about ownership of the debts and the allegations in this case? There is no dispute in this case that the plaintiffs owed the debts at issue, and there is no allegation in this case that any of the defendants acted by filing these state court lawsuits in bad faith. That is not the issue before this Court, and that distinction is what separates this case from any other case that has been cited in the papers, which discuss the conduct that is alleged in this case. This case concerns only a single question, whether or not it can be a violation of the FDCPA to file a lawsuit on a debt without intending to proceed to trial. And as you asked, Judge Pepper, what is the magic time for the alleged violation? According to the plaintiff, the magic time is the moment the lawsuit is filed. That, under the law, is not a violation of the FDCPA, and under Illinois law, that is not the requirement which drops into place on filing of a lawsuit. A plaintiff is entitled to file a lawsuit in good faith, and at any time thereafter, that plaintiff is the owner of the complaint. That plaintiff masters the complaint, and if the plaintiff elects not to proceed in litigating that complaint, the plaintiff has the absolute right to voluntarily dismiss that complaint. That is not unfair or an abusive process. It is not unfair or abusive to litigate within Illinois' established rules. It is, instead, entirely expected. That is why the process exists in the manner in which it exists. There can be no violation of the FDCPA in this case, where there is no violation of any Illinois pleadings requirement. The pleadings at issue here all complied because they were all voluntarily dismissed before the case went to trial. That's not an FDCPA violation. That's just a natural progression within an Illinois state court proceeding, in some cases, not in all cases. Certainly, in some cases, there may be a trial. In some cases, there may be a determination that the case is going to settle. There may be negotiations. There may be a non-suit. There may be a situation like the one you described, Judge Pepper, in which the plaintiff looks at the defendant and says, we will have compassion, we are not going to proceed with this claim. Any of those situations are entirely appropriate and allowed under Illinois law. The plaintiff, in this case, is arguing it does not matter. It does not matter that that is allowed under Illinois law. It makes absolutely no difference that, in fact, resolution prior to trial is the policy of courts of the entire country, in Illinois and in this district, in this circuit, in this federal system. The plaintiff is arguing no matter what, at the time a debt collector files a lawsuit,  and if that intent does not exist, the debt collector has violated the FDCPA. And further, the plaintiff is arguing, the only way to be able to identify the debt collector's intent, if an FDCPA claim is filed in this court, is to get past the pleadings phase and to go into summary judgment argument. That means, on its face, any time a debt collector files a case in state court, and that case is resolved prior to trial, there exists an FDCPA claim, which can proceed beyond the pleadings phase in this court. That is the rule that the plaintiff is advocating here. That is not the law. And, indeed, the language of the FDCPA makes clear. That is not the law. The language of the provision at issue, it's 1692E5, states simply that a plaintiff cannot, a debt collector cannot threaten, quote, to take any action that cannot legally be taken, or that is not intended to be taken. The intention of filing a lawsuit is simply to litigate the case. It is not to take the case to trial. And, again, this is a question that you asked, Judge Pepper. What is your intention at the time you file a lawsuit? What is the defining point of when a party expects to go to trial? Litigation is a continuum. Filing a lawsuit starts the beginning of that process. It does not, of itself, mean that the party who has initiated those proceedings intends to go all the way to trial. It simply means that the party who has filed the complaint intends to avail itself of the process available. It might make a change if the debtor won the lottery during the process. It may, Judge. And, in fact, that's a great point, because at that point if the debtor says, I'm going to pay the lawsuit, I'm going to satisfy the judgment, consent judgment, there's no need to proceed to trial, under the rule espoused by the plaintiff in this case, there would still exist an FDCPA claim, an alleged violation that could get to the summary judgment phase. That is not the rule under the statute. It is not the rule in state court. And, fundamentally, it is not the policy that exists under the FDCPA. Judge Easterbrook said in Beller v. Blatt-Hassenmiller, there is no trickery in taking legal action. That is the issue here. There is no trickery in filing a lawsuit that the plaintiff, the debt collector, is allowed to take, that the debt collector is allowed to file. To try to craft a rule that requires that any time a debt collection suit resolves before trial there exists an FDCPA violation would affect the plaintiff cases that are required to proceed to trial. And the district courts of this circuit would be inundated with cases alleging FDCPA cases. Consumers would be terribly prejudiced by this rule, because there is absolutely no ability for a debt collector to settle with a plaintiff, or to show compassion to a plaintiff, or to non-suit, or to voluntarily elect to forego the rights that debt collector has available. And debt buyers don't want these claims to go to trial necessarily, because debt buyers want to have the flexibility of making determinations about whether the cost benefit allows for going to trial, or whether it makes it important to non-suit. Fundamentally, the plaintiff, as I've said, would always be able to articulate an FDCPA claim, and that is not the rule under either the statute or state court. Because the plaintiffs cannot articulate an FDCPA claim in this case, all of these claims were properly dismissed. We ask that this court affirm those rulings. Thank you, Counselor. Any time left? You have one minute, Counselor. Just briefly address a couple of points. First of all, there is no prejudice to consumers here. I think the appellees are incorrect in saying that they could never do anything to go to trial under this rule. Certainly, if they intend to proceed to trial, if they intend to do that and then at some point settle, that's using litigation properly. What we're seeing here is people taking a system and using it in such a way as to coerce people into either default judgments or bring them into I think they're going to be asked leading questions that they don't even know they're under oath, and judgments are entered against them. And maybe that's a problem with how we collect at the state level. But I don't think there's going to be a floodgate of litigation here. These types of claims have gone forward from the pleading stage and other jurisdictions. It's all fleshed out in the briefs. And I do think that one of the key elements that's in those other cases is that at the time it was filed, there was no intention to proceed forward, which is something that can ultimately be proven after discovery. You won't know what's in the mind of the collector until you look at their records. So we request that the court reverse the district court and remand back for further proceedings. Thank you. Thank you, counsel. Thanks to both counsel. Again, the case will be taken under advisement.